UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARTIN GARZA NUNEZ** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 06-3777** |
| **WEEKS MARINE, INC.** | * | **SECTION: "L" (5)** |

**ORDER AND REASONS**

Pending before the Court is Defendant Weeks Marine, Inc.'s Motion to Stay and Compel Arbitration (Rec. Doc. 8). For the following reasons, the Court determines that the Defendant's Motion is DENIED without prejudice, pending a bench trial to determine the validity of the arbitration agreement at issue.

**I. FACTUAL BACKGROUND**

This dispute concerns whether the present action before this Court should be stayed and the Plaintiff Martin Nunez ('Plaintiff") should be compelled to arbitrate his claims against Defendant Weeks Marine Inc. (Defendant") pursuant to a post-injury arbitration agreement that was allegedly executed by the two parties. On July 17, 2006, the Plaintiff seaman filed suit against the Defendant employer in this Court for injuries he allegedly sustained on June 24, 2006 while working aboard the Defendant's vessel located in the Atchalfalaya Bay Channel. The Plaintiff claims damages under the Jones Act, 46 U.S.C. § 688, and general maritime law predicated on negligence and unseaworthiness of the vessel, along with a claim for maintenance and cure.

The Defendant filed the instant motion to compel arbitration, alleging that on June 28, 2006, the Plaintiff signed a Claims Arbitration Agreement (the "Arbitration Agreement" or "Agreement") which provided that any claims arising from his injuries on June 24, 2006 would be subject to arbitration pursuant to the American Arbitration Association Rules for Arbitration of Employment Disputes. The Defendant states that as consideration, it agreed to advance 50% of the Plaintiff's gross wages to him during the period of his convalescence or until October 28, 2006, an agreement with which it fully and timely complied. However, after it sent a written demand for arbitration to the Plaintiff's counsel on October 4, 2006, Plaintiff's counsel informed the Defendant on October 10, 2006 that the Plaintiff claims he never executed the Arbitration Agreement.

The Defendant contends that the Plaintiff, a Spanish speaker, executed a copy of the Arbitration Agreement in Spanish after an employee of the Defendant, fluent in both English and Spanish, explained the Arbitration Agreement's terms and conditions to the Plaintiff in his native language. The Defendant states that this employee and another employee were both witnesses to the Plaintiff's signing the Arbitration Agreement and they declare under penalty of perjury that the Plaintiff signed this document of his own free will in their presence. The Defendant also offers as evidence other documents signed by the Plaintiff to verify that the Arbitration Agreement includes the Plaintiff's true signature. As it contends the Arbitration Agreement is a post-accident agreement that is not part of the Plaintiff's employment contract and was knowingly and voluntarily executed by the Plaintiff absent fraud or duress, the Defendant states that the Agreement is legally valid and thus must be enforced.

In response, the Plaintiff claims that the Arbitration Agreement submitted by the Defendant is fraudulent and that he never signed such an agreement, nor did he waive his legal

rights, including his right to a trial by jury, as a Jones Act seaman.  The Plaintiff states that duress is also factually evident as the Defendant alleges that the Plaintiff signed the document only four days after his accident without the presence of an attorney, indicating that the Defendant attempted to rush and coerce the Plaintiff into signing the document.  Moreover, the Plaintiff claims that the Arbitration Agreement is unenforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-14, and void pursuant to public policy and Section 5 of Federal Employer Liability Act (the "FELA"), 45 U.S.C. § 55.

## II.  LAW AND ANALYSIS

### A.  Enforceability of the Arbitration Agreement Under the FAA

"[T]here is a strong federal policy favoring the arbitration process," *Buckley v. Nabors Drilling USA, Inc.*, 190 F.Supp.2d 958, 960 (S.D. Tex. 2002), *aff'd*, 51 Fed. Appx. 928, __F.3d__, 2002 WL 31415106 (5th Cir. 2002) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)); *Freudensprung v. Offshore Tech. Services, Inc.,* 379 F.3d 327, 341-42 (5th Cir. 2004) (citing *E.A.S.T., Inc. of Stamford, Conn. v. M/V Alaia*, 876 F.2d 1168, 1173 (5th Cir. 1989)), which is reflected in the provisions of the FAA.  Under the FAA, a federal court is required to compel arbitration if "a maritime transaction or a contract evidencing a transaction involving commerce" contains a written provision requiring arbitration of a dispute arising out of the contract or transaction, except in cases where the contract is a product of fraud, coercion, or is otherwise revocable in law or equity.  9 U.S.C. § 2.  The district court must stay trial of the action until arbitration has been made in accordance with the written arbitration agreement, 9 U.S.C. § 3, or it must affirmatively order the parties to

engage in arbitration. 9 U.S.C. § 4. However, Section 1 of the FAA, 9 U.S.C. § 1, specifically excludes employment contracts of seaman, without limitation, from FAA application. *Brown v. Nabors Offshore Corp.*, 339 F.3d 391, 394 (5th Cir. 2003). The term "seamen" has been found to have the same meaning for purposes of both the FAA and the Jones Act. *See Buckley*, 190 F.Supp.2d at 963-65. In the present case, the parties do not dispute that the Plaintiff qualifies as a seaman under either Act. The primary contention between the parties here is whether the Arbitration Agreement qualifies as a "contract of employment" under the Section 1 exclusion.

      The Supreme Court addressed the Section 1 exemption in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), in which the Court rejected an interpretation of that Section that would extend its application to *all* contracts of employment. The Court found that, in accordance with the maxim *ejusdem generis,* Section 1 was intended to apply only to the employment contracts of transportation workers. *Id.* at 115-19. Though the Supreme Court found the legislative record regarding the Section 1 exemption limited,[1] the Court made the "permissible inference" that "Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers." *Id.* at 120-21; *see also Buckley*, 190 F.2d at 962 ("Congress probably singled out seamen and railroad employees from the FAA because it had already enacted federal legislation otherwise providing for arbitration of disputes between seamen and their employers...."). The Court also postulated that seamen may have been

---

[1]The Supreme Court noted that the legislative record regarding Section 1 was "quite sparse" and commented that the parties had not provided any language from Committee Reports nor from House and Senate debate transcripts addressing the meaning of the Section 1 exemption. *Circuit City*, 532 U.S. at 119.

exempted from FAA coverage because the Shipping Commissioners Act of 1872, 17 Stat. 262, already provided for arbitration of seamens' disputes with employers. *Circuit City,* 532 U.S. at 121.

Though the Supreme Court decision in *Circuit City* dealt with the narrow question of whether Section 1 barred all employment contracts from governance under the FAA, the Fifth Circuit and district courts within its purview have subsequently held that a reading of *Circuit City* and Section 1's text and legislative history reveal that *all* seamen are exempted under Section 1, as all seamen are directly involved in the transport of goods in interstate commerce. *Buckley,* 190 F.Supp.2d at 961-62; *Brown,* 339 F.3d at 394-94. The most pertinent Fifth Circuit opinion on the present issue before this Court is *Brown v. Nabors Offshore Corp.*, though that case is factually distinguishable since the arbitration provision was not an ad-hoc post-injury agreement. In that case, several months pre-injury, the defendant employer sent employees, including the plaintiff, a letter noticing its adoption of a program requiring that all disputes between the defendant employer and employees be resolved through an arbitration process. *Id.* at 392. Attached to the letter was an acknowledgment form which the defendant required its employees to sign confirming notice and understanding of the letter. *Id.* The letter also stated that failure to return the signed form and continued employment constituted acceptance of the program. *Id.* The Fifth Circuit denied the defendant employer's request to stay the suit brought by the plaintiff in federal court and to compel arbitration because it found that the seamen plaintiff's employment contract was expressly excluded from FAA coverage pursuant to Section 1. *Id.* at 394. Thus, it can be inferred from the Fifth Circuit's holding that the form and notice were considered part of the plaintiff's employment contract, though the court did not expressly

make this statement.[2]

Though the Defendant in the present case contends that the Arbitration Agreement is not an employment contract, the Plaintiff claims that the Arbitration Agreement arose out of the Plaintiff seaman's employment contract and the injury allegedly suffered by the Plaintiff occurred while the Plaintiff was performing tasks within the course and scope of his employment. In other words, "but for" the Plaintiff's employment, the Arbitration Agreement would not exist or would have no purpose. The Plaintiff argues that the Defendant's contention that the Agreement is not related to the employment contract, but rather involves a separate and distinct issue of choosing a forum for a personal injury claim, is therefore unfounded.

After a review of the terms and conditions of the English-translation of the Arbitration Agreement allegedly signed by the Plaintiff, it does not appear that this document qualifies as an employment contract. Though it is true that the accident occurred while the Plaintiff was performing his employment duties and the Defendant was required to advance a portion of the Plaintiff's salary to him in excess of maintenance and cure,[3] this alone is not sufficient to constitute an employment contract. No language exists in the contract itself that indicates the

---

[2] Additionally, the district court in *Buckley,* a case factually and legally indistinguishable from *Brown*, concluded that the exact same arbitration agreement and program at issue in *Brown* constituted an invalid and unenforceable arbitration provision under the FAA, as it arose pursuant to the plaintiff's exempt employment contract. *Buckley*, 190 F.3d at 966. The Fifth Circuit later affirmed the *Buckley* district court decision, but did not comment on the proper scope of Section 1 or whether the arbitration provisions at issue were exempted, as the defendant did not raise these points in his opening brief. *Buckley v. Nabors Drilling USA, Inc*., 51 Fed. Appx. 928, 2002 WL 31415106, at *1 (5th Cir. Oct. 8, 2002). Rather, the Fifth Circuit based its decision on failure to establish the existence of a binding agreement between the parties. *Id.*

[3] According to the pleadings, the Plaintiff was entitled to maintenance and cure of $20.00 per day. (Williams Decl., Ex. to Def. Mot. to Stay)

Plaintiff's acceptance of the agreement as a condition of his continued employment, nor does it otherwise modify the Plaintiff's employment status or alter the terms of his employment.[4]

This is in contrast to *Brown* and *Buckley* where the defendant employer "effectively *required* all...employees to resolve disputes against [defendant] through binding arbitration proceedings." *Buckley*, 190 F.Supp.2d at 958 (emphasis added), no matter what type of dispute was involved and no matter when the event giving rise to the dispute took place. In those cases, failure to send back a signed acknowledgment form and continued employment was deemed consent. *Brown*, 229 F.3d at 392.[5] In the present case, the Plaintiff was allegedly offered a choice whether to accept arbitration or not for a tort claim, and he was offered this choice after his injury occurred. Though the Plaintiff argues that the Agreement qualifies as an employment contract because it would not exist, "but for" the fact he was employed by Defendant, using this reasoning would designate any and all contracts signed by the parties as employment contracts, no matter their purpose or subject matter. The Court declines to adopt this broad construction of Section 1. *See Barbieri v. K-Sea Transp. Corp.*, 2006 U.S. Dist. LEXIS 91565, at *22 (E.D.N.Y. Dec. 18, 2006) ("[G]iven the Congressional intent manifested in the FAA, courts have been extremely reluctant to afford a much more expansive meaning to what is, in effect, an

---

[4] In *Gilmer. v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 n.2, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the United States Supreme Court found that a registered securities representative's agreement to submit discrimination claims to arbitration in his securities registration application was not a "contract of employment" within Section 1's meaning, as it was a contract with the securities exchanges, and not with his employer. Thus, the Supreme Court does not broadly define "employment contract" as any contract that has some connection or relation to a party's employment.

[5] The form stated "[y]our continued employment after the date you receive the enclosed documents will constitute your acceptance of the Program." *Id*.

7

exclusionary clause.").

Though the Fifth Circuit has not specifically addressed Section 1's applicability to ad-hoc, post-injury arbitration agreements,[6] a New York state court decision, *In re Nicholas Schreiber v. K-Sea Transp. Corp.*, 30 A.D.3d 101, 814 N.Y.S.2d 124 (N.Y. App. Div. Apr. 25, 2006), directly concerns the issue at hand and is thoughtful in its analysis. In that case, the post-injury agreement provided that the defendant employer's payment to the plaintiff seaman of two-thirds of his net weekly wages was conditioned upon the plaintiff's agreement to submit all legal claims, including those related to the Jones Act and unseaworthiness, to arbitration. *Id.* at 103. Though the court found that it did not have enough factual information before it to make a determination regarding the validity of the arbitration agreement, the court held that the plaintiff

---

[6]Before the filing of this opinion, the Defendant notified the Court that the Fifth Circuit recently issued a decision that directly speaks to the issue at hand. (Def. Supp. Mem., Rec. Doc. 32). That decision, *Terrebonne v. K-Sea Transp. Corp.*, __F.3d__, 2007 WL 196532 (5th Cir. Jan. 26, 2007), confirms this Court's holding today. The Fifth Circuit held that a post-injury agreement between a seaman and his employer providing for arbitration of claims related to an injury incurred during the course of employment did not qualify as an employment contract. The arbitration agreement did not appear to fall within the Section 1 exemption because it did not purport to employ the Plaintiff seaman or modify his employment contract in any way. *Id*. at *4. The arbitration agreement's maintenance and cure provision, though "an intrinsic part of the employment *relationship*," was not a part of the actual employment contract. *Id.* at *4-5.

Likewise, in this case, the Arbitration Agreement does not attempt to modify or otherwise alter the maintenance and cure obligation or the Plaintiff's employment with the Defendant. The Arbitration Agreement therefore cannot be considered part of the employment contract. *See id.* at *5.

The Fifth Circuit also dismissed the plaintiff's argument that the arbitration agreement was void due to public policy and applicability of FELA Sections 5 and 6. These points are discussed in further detail in this opinion. *See infra,* n.9 & 11.

The Plaintiff attempts to limit the applicability of *Terrebonne* by arguing that that case may be distinguished from this one in three different ways: in *Terrebonne*, (i) the plaintiff accepted money in consideration of restricting himself to binding arbitration; (ii) an evidentiary hearing was held regarding the merits of the plaintiff's claim; and (iii) the plaintiff signed a consent order. The Court is not persuaded that any of these arguments limit the applicability of *Terrebonne* to the present dispute.

failed to demonstrate that a post-injury agreement to arbitrate a personal injury claim constituted an alteration of his employment contract. *Id*. at 109-11. The court reasoned that the plaintiff's claims were based in tort, rather than contract, and the dispute did not arise under the collective bargaining agreement applicable to the plaintiff. *Id.* at 106.

    The court noted the tension between the strong federal policy favoring arbitration, reflected in the FAA, and the federal policy affording seamen heightened protection, reflected in the Jones Act. *Id.* at 107. Though it considered it "tempting to reason that an arbitration provision incorporated into an employment contract is ineffective against a Jones Act claim then an ad hoc, post-injury agreement should be reasonably ineffective," the plaintiff failed to sustain his burden to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue, including the right to a trial by jury. *Id*. at 105-08.[7] The court found it settled from the *Circuit City* decision as well as the *Buckley* case that "courts are required to accord a literal application to the FAA's exclusion for employment contracts of workers engaged in interstate commerce, without regard to policy considerations." *Id.* at 108 (citing *Circuit City*, 532 U.S. at 119-20 and *Buckley*, 190 F.Supp.2d at 965 n.2)). A plain reading of the Section 1 exclusion for arbitration provisions inserted into contracts of employment revealed that it did not extend to the arbitration agreement at issue in that case. *Schreiber,* 30 A.D.3d at 109. No policy implications could be drawn from the Section 1 statutory exception, and the plaintiff failed to identify any Jones Act provision supporting his argument that the right to a jury trial under the Jones Act stems from Congress wish to single out seamen for special protection . *Id.* at 107-09

---

    [7]In *Gilmer*, the Court stated that the burden is on the party opposing arbitration to show that Congress intended to preclude a waiver of judicial remedies for statutory rights at issue. *Gilmer*, 500 U.S. at 26.

("Predating the FAA by five years, the Jones Act contains no expression of intent to limit the pursuit of its remedies to the judicial forum.")[8]

In the present case, the Plaintiff states that his claim is not subject to arbitration because "Congress enacted the Jones Act and the Longshoremen's and Harbor Worker's Compensation Act to ensure that seamen are compensated for injuries arising from the perils of their occupation" (Pl's Supp. Mem. Opp. Def's Mot. 6) and "the Agreement is contrary to public policy because it takes away a Jones Act seamen's fundamental right to trial by jury." (Pl's Sur-Reply Mem. Opp. Def's Reply Mot. 3). These statements are similar to those arguments stated in "summary fashion" by the plaintiff in *Schreiber*, and likewise, this Court is not persuaded. *See Schreiber*, 30 A.D.3d at 106.[9] The Plaintiff also cites *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942) and *Duncan v. Thompson*, 315 U.S. 1, 62 S.Ct. 422 (1942), in support of his argument. However, these cases dealt with release of claims or permitted the defendant's exemption from liability. Here, the Arbitration Agreement does not release the Defendant from liability, nor does it make any determination of fault. Moreover, *Garrett* held that a seaman may waive his right to a jury trial via a release executed without fraud or coercion. *Id.* at 248. The Plaintiff states in an Opposition Memorandum that the "Defendant

---

[8]The Jones Act provides, in pertinent part:
> Any seamen who shall suffer personal injury in the course or his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States, modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.

46 U.S.C. § 688(a).

[9]*See also Terrebonne*, 2007 WL 196532, at *9-10 (dismissing the plaintiff's "vague reference to the unfairness of pre-injury arbitration agreements (of seamen and of others) *generally* and *generically*").

erroneously argues that the purported 'agreement' does not limit Weeks' liability to Nunez under the Jones Act and general maritime law. However, it clearly limits Nunez's rights by denying him his fundamental constitutional right to a trial by jury." " (Pl's Sur-Reply Mem. Opp. Def's Reply Mot. 2-3). However, an agreement to arbitrate rather than proceed through federal court is not a limitation on liability. The Plaintiff misconstrues the two concepts. There is nothing within the Jones Act that states that a Plaintiff may not waive the right to a jury trial. In fact, a seaman does in effect waive his right to a jury trial when he files his claim under Rule 9(h) of the Federal Riles of Civil Procedure.

  The Fifth Circuit clearly favors the enforcement of arbitration clauses. "It is by now beyond cavil" that an agreement to arbitrate personal injury claims are "presumptively enforceable." *Freudensprung*, 379 F.3d at 342. "It is only by rigorously enforcing arbitration agreements according to their terms, do we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA." *Id.* (quoting *Ford. v. NYL Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 248-49 (5th Cir. 1998) and *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). As Section 1 is a narrowly-tailored exception to the well-settled liberal policy favoring enforcement of arbitration provisions, *see Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 505 (4th Cir. 2002) (citing *Circuit City*, 532 U.S. at 118), the Arbitration Agreement does not qualify as an employment contract under Section 1, and it is not exempt from the FAA's application.[10]

---

  [10]*See also Endriss v. Ekloff Marine Corp.*, 1998 WL 1085911 (S.D.N.Y. July 28, 1998). In that case, interestingly, the plaintiff seaman argued that the ad-hoc post-injury arbitration agreement executed by the plaintiff and the defendant employer did not qualify as an

**B. Enforceability of the Arbitration Agreement under FELA**

The Plaintiff additionally asserts that *Boyd v. Grant T.W.R. Co.*, 338 U.S. 263, 70 S.Ct. 26 (1949) supports his argument. In that case, a railroad employee signed a contract with his employer post-injury restricting his choice of venue for an action based upon the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq*. The employee subsequently argued that the contract was void under Section 6 of FELA, which permits injured railroad workers to bring suit in state or federal court and prohibits removal of his or her action. 45 U.S.C. § 56. The Supreme Court held that the contract limiting choice of venue was void as it conflicted with FELA, stating that the "petitioner's right to bring the suit in any eligible forum is a right of sufficient substantiality to be included within the Congressional mandate of Section 5 of the Liability Act." *Id*. at 265. Section 5 states that "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void...." 45 U.S.C. § 55. The Court determined that the right to select a forum in Section 6 of FELA is a "substantial right." *Id.* at 265.

The Jones Act extends the same rights to seamen as those extended to railroad employees under FELA. *Cox. v. Roth*, 348 U.S. 207, 208, 75 S.Ct. 242, 243, 99 L.Ed. 260 (1955); 46 U.S.C. § 688, and it incorporates FELA's "entire judicially developed doctrine of liability." *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 439, 78 S.Ct. 394, 401 2 L.Ed.2d 382 (1958). Thus,

---

employment contract exempt under Section 1. *Id*. at *4. The Court found that the agreement was not part of his employment contract, as it was executed after the injury and for the specific purpose of resolving claims for those injuries. The Court also looked to prior case law which called for Section 1 to be narrowly construed. *Id.*

the Plaintiff argues that the Court should find the arbitration agreement void under the *Boyd* decision.

However, besides the fact that the Fifth Circuit has held that a forum selection clause contained in a seaman's employment contract is enforceable as long as it is fundamentally fair. *Marine Chance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 221 (5th Cir. 1998) (though, as stated above, this dispute does not concern an employment contract), this case concerns an agreement to arbitrate and not a forum selection or venue clause.[11]  Accordingly, *Boyd* is not applicable to the issue before the Court.

### C.  Enforceability of the Arbitration Agreement Under State Law

Additionally, even if this Court had determined that the Arbitration Agreement is excluded from FAA application, the Arbitration Agreement is otherwise enforceable under state law.  In *Schreiber*, the court reasoned that even if federal arbitration law did not apply, state arbitration law did, and state law, like the FAA, reflected the strong public policy of promoting arbitration.  *Schreiber*, 30 A.D.3d at 106.  Thus, state law required enforcement of the arbitration agreement, unless federal policy precluded it.  Other courts have similarly held that "the effect of Section 1 is merely to leave the arbitrability of disputes in the excluded categories as if the

---

[11]The Fifth Circuit recently dismissed this argument in *Terrebonne*, 2007 WL 196532, at *6, decided before this opinion was filed on the record. *See* n.6 *supra.*  The Fifth Circuit reiterated its holding that FELA's Section 6 venue provision was not applicable to the Jones Act, which contains its owns venue provision, Section 688(a). *Id.* at *6 (referring to prior decision in *Pure Oil Co. v. Suarez*, 346 F.2d 890, 892 (5th Cir. 1965); *see also* 46 U.S.C. §688(a) (stating that venue is proper in a district where "the defendant employer resides" or "his principal office is located.").  As Section 6 of the FELA is inapplicable, the Court found that "it necessarily follows that nothing in section 5 of the FELA is applicable to Jones Act venue.  Hence, neither *Boyd* not section 5 dictate the result here." *Id.* at *7. Moreover, at the time of the *Boyd* decision, the FAA had not been enacted, nor did any other federal statute calling for the presumptive enforceability of arbitration agreements exist.  *Id.*

13

Arbitration Act had never been enacted...[T]he question remains whether, without regard to the Arbitration Act, [a] stay order [is] within judicial power." *Mason-Dixon Lines, Inc. v. Local Union No. 560,* 443 F.2d 807, 809 (3rd Cir. 1971). Thus, courts have enforced arbitration provisions against claims arising from FAA-excluded contracts if such provisions are enforceable under state law. *See O'Dean v. Tropicana Cruises Int'l Inc.*, 1999 U.S. Dist. LEXIS 7751, at *4 (S.D.N.Y. May 25, 1999) ("The inapplicability of the FAA does not mean, however, that arbitration in seaman's employment contracts are unenforceable, but only that the particular enforcement mechanisms of the FAA are not available."); *Valdes v. Swift Transp. Co.*, 292 F.Supp.2d 524, 528-30 (S.D.N.Y. 2003).

In making this determination, courts have looked to the plain language of Section 1 itself. *See id.* at 529. Section 1, interpreted to apply to the FAA in its entirety, states that "nothing herein contained shall apply" to the employment contracts of certain categories of workers. 9 U.S.C. § 1. However, no language in Section 1 addresses whether or not FAA-exempt employment contracts are enforceable otherwise. *See id*. In *Valdes*, a truckdriver's claims against his employer relating to alleged Title VII and New York human rights law violations were excludable from FAA coverage under Section 1. The court held, however, that the claims remained arbitrable and stated that an opposite conclusion "flouts the principle that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. And most importantly, it essentially re-writes what is merely an exemption providing that the FAA does not apply into a substantive pronouncement that such clauses in transportation workers' contracts are unenforceable." *Valdes*, 292 F.Supp.2d at 529.

Under Louisiana law, a presumption of arbitrability exists with regard to the

enforceability of arbitration agreements. *Aguillard v. Auction Mgmt. Corp.*, 2004-2804 & 2004-2857, p. 7 (La. 6/29/05), 908 So.2d 1, 6 (declaring "[a]t the outset, we note the positive law of Louisiana favors arbitration" and citing La. Rev. Stat. §§ 9:4201 and 9:4202).[12]  Thus, the Arbitration Agreement would be enforceable under state law, even if it was exempted from FAA governance.

### D. Validity of Arbitration Agreement Absent Fraud and Duress

However, the Court's review at this point is not complete as the determination remains as to whether the Arbitration Agreement is invalid due to fraud or duress. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (citing 9 U.S.C. § 4 and stating federal court may determine challenges to arbitration provisions's validity, but not to validity of entire contract containing arbitration provision, as "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

---

[12] La. Rev. Stat. § 9:4201 contains similar language to Section 2 of the FAA. *See Aguillard*, 908 So.2d at 7 ("Such favorable treatment echos the Federal Arbitration Act."). Section 4201 specifically states:
> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Furthermore, Section 4202 provides:
> If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with the arbitration.

La. Rev. Stat. § 9:4202.

"Under the FAA, a written arbitration agreement is prima facie valid and must be enforced unless the opposing party...alleges and proves that the arbitration clause itself was a product of fraud, coercion, or such grounds exist at law or in equity for the revocation of the contract." *Freudensprung*, 379 F.3d at 341 (citing *National Iranian Oil v. Ashland Oil, Inc.*, 817 F.2d 326, 332 (5th Cir. 1987) and 9 U.S.C. § 2).[13]  Courts must "remain attuned to well supported claims that the agreement to arbitrate resulted from some sort of fraud or overwhelming economic power that would provide for grounds for the revocation of any contract." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).  It is particularly important in this case, as the shipowner owes a fiduciary responsibility to a seaman and the seaman is considered a ward of admiralty.[14]

Since the Plaintiff is the party seeking to invalidate the Arbitration Agreement's enforceability and therefore opposes arbitration, he holds the burden of proving that there was no

---

[13]Though the Court finds that federal law applies to the validity and enforceability issue, it notes that state law provides for similar analysis.  In addressing the enforceability of arbitration, the Louisiana Supreme Court recently stated that "[d]ue to the strong and substantial similarities between our state arbitration provisions and the federal arbitration law..., the federal jurisprudence provides guidance in the interpretation of our provisions." *Aguillard*, 908 So.2d at 18.

Louisiana law promotes a liberal policy favoring arbitration and "[i]t is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that [he or] she did not read it, that [he or] she did not understand it, or that the other party failed to explain it to [him or] her." *Stadtlander v. Ryan's Family Steakhouses, Inc.*, 794 So.2d 881, 889 (La. App. 2 Cir. 04/04/01); *see also Aguillard,* 908 So.2d at 17.  However, fraud or duress negates application of this traditional rule.  La. Rev. Stat. § 9:4201.

[14]This issue is also significant because the Plaintiff focuses on his right to a trial by jury.  If he indeed entered into an arbitration agreement, the Plaintiff would be deemed to have waived his right to a jury trial. *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711 (5th Cir. 2002), *cert. denied*, *Orr v. Am. Heritage Life Ins. Co.*, 537 U.S. 1106, 123 S.Ct. 871, 154 L.Ed.2d 775 (2003).

deception or coercion on the part of the Defendant. *See Green Tree Fin. Corp-Alabama v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).[15] The Plaintiff claims that he did not sign the Arbitration Agreement and that the Defendant committed fraud. The Plaintiff also contends that even assuming he did indeed sign the Agreement, it was executed only four days after his injury in a hotel room and therefore "smells of coercion." (Pl's Mem. Opp. 2).

In response, the Defendant offers voluntary, though unsworn, statements of two alleged witnesses, including one employee who states that he explained the terms and conditions of the Arbitration Agreement to the Plaintiff in Spanish. It also offers the Arbitration Agreement in Spanish with the Plaintiff's signature, as well as an English translation and other documents allegedly signed by the Plaintiff, as verification that the Arbitration Agreement contains a copy

---

[15]The Plaintiff argues that the Defendant, as fiduciary, bears the burden of proving the validity of the Arbitration Agreement and cites language from *Garrett*, decided before the FAA's enactment:
> If there is any undue inequality of the terms, any disproportion of the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary high benefits on the other, the judicial interpretation of the transaction, is that the bargain is unjust and unreasonable....

*Garrett*, 317 U.S. at 247. The Plaintiff states that the Arbitration Agreement represented "a grossly unbalanced exchange." (Pl's Supp. Mem. Opp.). However, the Agreement does not release the Defendant from any claims or in any way determine the extent of its liability. It does not preclude him from pursuing all of his claims or deny him the right to seek full compensation. The Plaintiff argues that the short-period of time between the injury and the date the Defendant approached the Plaintiff for Agreement execution indicates that the Defendant must have believed it was being released from something. The Court disagrees. As stated clearly in the opening paragraph of the Arbitration Agreement, both parties had some benefit to gain from arbitration: "The purpose of this Claim Arbitration Agreement is to help avoid the time, expense and emotions associated with dragging our problems through the litigation system." (Ex. 2 to Def. Mot. Compel). *See also Green Tree*, 531 U.S. at 521 ("We have...rejected generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'") Moreover, the burden in *Garrett* concerned a burden of sustaining release of claims. As stated previously, release of claims is not an issue here.

of his true signature.

The Court at this time is not adequately apprised of the facts and circumstances surrounding the execution of the Agreement and thus is not "satisfied that the making of the Agreement is not in issue." 9 U.S.C. § 4.  The Court has no information before it concerning the Plaintiff' education level, including his reading ability, nor his English comprehension level.  The Court also does not have any information before it concerning the circumstances leading up to and surrounding the execution of the document, other than that two witnesses were allegedly present and it is claimed to have taken place in a hotel room four days after the injury.  One witness states that he explained the document in Spanish to the Plaintiff.  However, the extent of disclosure is not revealed.  Nor does the Court have knowledge regarding the extent of the Plaintiff's injuries, whether he was on any medication or whether he was experiencing effects of any pain.  It also cannot ascertain the credibility of witnesses from the pleadings.  Accordingly, a bench trial on the issue of whether fraud or duress invalidates the Arbitration Agreement is necessary.  9 U.S.C. § 4*; see also Schreiber,* 30 A.D.3d at 110-11; *Endriss*, 1998 WL 1085911, at *5-6; *Barbieri*, 2006 U.S. Dist. LEXIS 91565, at *31.

### III.     CONCLUSION

For the foregoing reasons, the Defendant's Motion to Stay and Compel Arbitration under 9 U.S.C. §§ 3 and 4 is DENIED without prejudice.  Any arbitration proceedings are stayed pending the outcome of a bench trial on the issues of fraud and duress and the Court's determination that the Arbitration Agreement was knowingly and voluntarily executed.  IT IS ORDERED that a status conference shall be held on March 1, 2007 at 1:30 p.m. to schedule a

bench trial on the issues of fraud and duress.

New Orleans, Louisiana, this 13th day of February, 2007.

_____<br>
UNITED STATES DISTRICT JUDGE