## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARTIN GARZA NUNEZ** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 06-3777** |
| **WEEKS MARINE, INC.** | * | **SECTION:  "L" (5)** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.  Factual and Procedural Background

This dispute concerns whether a post-injury arbitration agreement (the "Arbitration Agreement ") between Plaintiff seaman Martin Nunez Garcia ("Plaintiff") and his employer Defendant Weeks Marine, Inc. ("Defendant") was knowingly and voluntarily executed in the absence of fraud and duress.  On July 17, 2006, the Plaintiff filed suit against the Defendant for injuries he allegedly sustained on June 24, 2006 while working aboard the Defendant's vessel, located at the time in the Atchalfalaya Bay Channel.  The Plaintiff claims damages under the Jones Act, 46 U.S.C. § 688, and general maritime law predicated on negligence and unseaworthiness of the vessel, along with a claim for maintenance and cure.

The Defendant subsequently filed a motion to compel arbitration, alleging that a Claims Arbitration Agreement (the "Arbitration Agreement" or "Agreement") binds the parties to arbitrate the Plaintiff's claims.  The Plaintiff contended that the Arbitration Agreement was unenforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-14, and void pursuant to public policy and Section 5 of Federal Employer Liability Act (the "FELA"), 45

U.S.C. § 55.  In an Order and Reasons issued by the Court on February 13, 2007, the Court rejected these arguments.  However, the Court found that arbitration proceedings should be stayed pending the outcome of a bench trial on the issues of fraud and duress and whether the Arbitration Agreement was knowingly and voluntarily executed.

Trial was held on April 16, 2007.  The Defendant argued that the Plaintiff, a Spanish speaker, executed a copy of the Arbitration Agreement in Spanish after one employee of the Defendant, Travis Williams, explained the Agreement's terms in English, and another employee of the Defendant, Jose Garza, fluent in both English and Spanish, acted as a translator and explained the Arbitration Agreement's terms and conditions to the Plaintiff in his native language.  The Defendant stated that the Agreement is legally valid and thus must be enforced because it was knowingly and voluntarily executed by the Plaintiff absent fraud or duress.

In response, the Plaintiff claimed that the Arbitration Agreement is unenforceable due to fraud and duress.  The Plaintiff stated that duress is factually evident as the Plaintiff signed the document only four days after his accident while he was on pain medication and without the presence of an attorney, indicating that the Defendant attempted to rush and coerce the Plaintiff into signing the document.  The Plaintiff states that fraud is evident because pages of the Arbitration Agreement were later substituted for those in place at the time that the Plaintiff executed the document.

After a review of the evidence presented at trial, including witness testimony and exhibits entered into the record, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.  To the extent that a Finding of Fact constitutes a Conclusion of Law, the Court adopts it as such.  And to the extent that a Conclusion of Law constitutes a Finding of Fact, the Court also adopts that assumption.

**II.  Findings of Fact**

(1)

Plaintiff seaman Martin Garcia Nunez is an individual of the age of majority and a citizen of Mexico.  While he is working in the United States, he resides in Rio Grande, Texas.  The Plaintiff has a ninth grade education.  He speaks Spanish fluently and reads and writes Spanish with some difficulty.  The Plaintiff cannot read or speak English, though he was able to communicate or follow instructions sufficiently to perform services aboard the Defendant's vessel as a deckhand beginning in September of 1998.

(2)

For all relevant times, Defendant Weeks Marine, Inc. was the Plaintiff's employer.

(3)

On June 24, 2006, the Plaintiff allegedly sustained injuries while he was performing services aboard the Defendant's vessel George D. Williams.  The Court makes no findings at this time regarding the nature and circumstances surrounding the accident, or apportions liability to any party.  However, for purposes of a review of evidence regarding the Plaintiff's physical and mental capacities at the time of the Arbitration Agreement's execution, the Court finds that the Plaintiff sustained a herniated cervical disk and a herniated lumbar disk.  The Plaintiff was taken to the emergency room where he received treatment and he was later taken to doctors on June 26 and/or June 27, 2006 to receive further treatment and a prescription for pain medications.

(4)

On June 26, 2006, the Defendant's employees, including Mr. Travis Williams, transported the Plaintiff from the dredge to the Best Western Inn in Morgan City, Louisiana so that the Plaintiff could recuperate from his injuries.  During the following days, Travis Williams,

a field engineer and surveyor, brought the Plaintiff food, clothing and other items, as the Plaintiff was staying at the hotel alone in considerable pain and physically unable to procure these items for himself.  The Plaintiff also continued to take the pain medications prescribed to him throughout this period.  The Plaintiff recalls that he felt out of sorts or drowsy due to the medication.

(5)

On June 28, 2006, the Defendant's Risk Management Department emailed Mr. Williams a copy of the Arbitration Agreement written in Spanish, with instructions to present it to the Plaintiff and discuss whether the Plaintiff would be willing to arbitrate his claims against the Defendant.

(6)

 This Arbitration Agreement provides that any claims arising from the Plaintiff's alleged injuries will be subject to arbitration pursuant to the American Arbitration Association Rules for Arbitration of Employment Disputes.  English Version of Arbitration Agreement, Ex. 6 to Joint Exhibit Book, at 1-2.  The Arbitration Agreement includes an agreement by the Defendant to advance 50% of the Plaintiff's gross wages to him during the period of his convalescence or until October 28, 2006.  *Id.* at 2.  The Agreement further states that the arbitration judge(s)' decision will be "final and applicable in any part and any District Court of the United States."  *Id.*  The Agreement also contains the following clause above the signature block: "I have not been forced in any way to sign this agreement.  I have signed this agreement with knowledge and voluntarily."  *Id.* at 3.

(7)

Mr. Williams was not familiar with the arbitration process, as this was the first time Mr.

Williams had presented an arbitration agreement to another employee.  Mr. Williams also could

not read the Arbitration Agreement because he does not read or speak Spanish, and he did not

have a copy of the English translation.  Mr. Williams was able to discern, however, that the

Arbitration Agreement did not include correct name of the Plaintiff, the correct date of the

accident, or the correct vessel's name.  Instead, the Arbitration Agreement incorrectly listed the

injured employee as Joe I. Jimenez , incorrectly listed "Venture" as the name of the vessel on

which the injury occurred, and incorrectly listed the date of accident as April 29, 2006.

Arbitration Agreement, Ex. 2 to Joint Exhibit Book.  Mr. Williams mentioned these

discrepancies to the Risk Management Department, but was unable to procure a revised

Agreement with the correct information.  The Risk Management Department instructed Mr.

Williams to utilize the incorrect Arbitration Agreement with Mr. Jiminez's name.

(8)

On June 28, 2006, Mr. Williams met with the Plaintiff in Mr. Williams' hotel room, also

at the Best Western.  Mr. Williams and the Plaintiff called another of the Defendant's

employees, Mr. Jose Garza, to come to the room to serve as an interpreter, as Mr. Garza speaks

and writes both Spanish and English.  Mr. Garza is also the Plaintiff's cousin.  Mr. Williams

gave the Plaintiff a copy of the Arbitration Agreement written in Spanish with the incorrect

name, vessel and accident date.  *Id.*  The meeting lasted approximately thirty minutes to an hour.

(9)

According to Mr. Williams and Mr. Garza's observations, the Plaintiff was

uncomfortable and in pain during the meeting.  He stood for most of the meeting, explaining that

sitting or lying down increased his pain.

(10)

Mr. Williams explained in English that if the Plaintiff signed the Agreement, the Plaintiff's medical treatment would be paid by the Defendant and the Plaintiff would receive half his wages while recovering from the accident.  Mr. Williams further stated that, in exchange, the Plaintiff would not be able to go to court and sue the Defendant, but had to sit down behind closed doors with multiple individuals and discuss options for resolution.

(11)

The Plaintiff told Mr. Williams and Mr. Garza that he did not understand the document because it did not have his name on it, the date of the accident, nor the name of the dredge on which he was working.  Mr. Williams explained that this language would be changed later to reflect the correct information.

(12)

Mr. Williams did not explain that the Arbitration Agreement was a legal document, that the Plaintiff had the right to obtain an attorney before he signed the document, or advise the Plaintiff of any rights or alternatives he may have if he chose not to sign the document.  Mr. Williams did not ask the Plaintiff if he was in pain or whether or not he fully understood the document.

(13)

Mr. Williams relied on Mr. Garza to translate his statements to the Plaintiff.  Mr. Williams also relied on Mr. Garza to translate the Arbitration Agreement into English, as Mr. Williams still did not have an English translation and did not know what the Agreement said word for word.

(14)

Though Mr. Williams states that Mr. Garza and the Plaintiff had several verbal

exchanges after Mr. Williams spoke and Mr. Garza asked Mr. Williams several questions, Mr.

Williams does not know exactly what Mr. Garza told the Plaintiff about the Arbitration

Agreement or whether Mr. Garza accurately translated his statements.

(15)

Mr. Garza did not have any prior experience reviewing arbitration agreements before the

meeting in Mr. Williams' hotel room on June 28th.  He did not understand everything that he

read and would ask Mr. Williams questions when he had trouble understanding the Agreement's

terms.  Mr. Garza read through the Agreement with the Plaintiff, reading several sentences and

then explaining before proceeding to the next sentence, and stopping to ask Mr. Williams

questions when he did not understand.  The Plaintiff also asked Mr. Garza several questions, and

Mr. Garza tried to explain as best he could.  However, Mr. Garza was limited by his lack of

knowledge regarding the arbitration process.  Mr. Garza does not recall the questions the

Plaintiff asked him.  In fact, Mr. Garza does not remember much of anything about this face to

face meeting.

(16)

Mr. Williams and Mr. Garza did not make any threats to the Plaintiff or attempt to

deceive, coerce or influence him with promises or personal opinions in order to get him to sign

the Arbitration Agreement.  There is no evidence that the Plaintiff was threatened with physical

violence or told that he would lose his job or right to receive medical treatment and

compensation for any injuries sustained if he did not sign the Agreement.  Mr. Williams and Mr.

Garza had no personal interest in whether the Plaintiff signed the Agreement or not.

(17)

The Plaintiff executed the Agreement and was given a copy at the conclusion of the meeting.  The Plaintiff was told that he would get an amended Agreement which correctly reflected his name, the vessel and the date of the accident.

(18)

After Mr. Williams delivered the signed Arbitration Agreement to the Defendant's main office, the appropriate revisions were made changing the name of the injured employee from Mr. Jimenez to Mr. Nunez, changing the name of the dredge from Venture to the George Williams, and changing the date of injury from April 29, 2006 to June 24, 2006.  Amended Arbitration Agreement, Ex. 1 to Joint Exhibit Book.  No other changes were made.

(19)

The Defendant, however, never sent a copy of the revised Arbitration Agreement to the Plaintiff.

( 20)

The Defendant sent the Plaintiff a check for maintenance and 50% of his wages through October 28, 2006, pursuant to the terms of the Arbitration Agreement.  The Plaintiff did not cash the check and returned it to the Defendant.

**III.  Conclusions of Law**

(1)

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333, which provides original jurisdiction over admiralty or maritime claims, and the Jones Act, 46 U.S.C. § 688. Venue is proper because the Defendants are subject to the personal jurisdiction of this Court.

(2)

Section 2 of the FAA requires enforcement of an agreement to arbitrate "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2.  There is a

strong federal policy favoring arbitration agreements. *Moses H. Cone Mem. Hosp. V. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). However, courts must "remain attuned to well-supported claims that the agreement to arbitrate resulted from some sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Endriss ,*1998 WL 1085911, at *5 (S.D.N.Y. July 28, 1998) (citing *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc*., 473 U.S. 614, 627 (1985)). Thus, a federal court may adjudicate issues concerning the "making of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)).

The district court conducts a two-step inquiry when determining whether a dispute should be arbitrated under the FAA. The court first determines whether a valid agreement to arbitrate exists. *Mitsubishi Motors Corp. V. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 628 (1985). If so, the court then moves on to determine whether any external legal constraints to the parties' agreement exist which would foreclose arbitration of those claims. *Id*. The first step depends on two considerations: (i) whether there is a valid agreement to arbitrate between the parties; and (ii) whether the dispute in question falls within the arbitration agreement's scope. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (citing *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)). When the court ascertains whether the dispute falls within the arbitration agreement's scope, "ambiguities...[are] resolved in favor of arbitration." *Id.* (citing *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ*., 489 U.S. 468, 475 (1989)). However, "this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead 'ordinary contract principles determine who is bound.'" *Fleetwood*, 280 F.3d at 1073 (citing *Daisy Mfg. Co., Inc. v. NCR Corp.*, 29 F.3d 389,392 (8th Cir. 1994)); *see also EEOC v. Waffle House*, 534 U.S. 279, 294 (2002).

(3)

In the present case, the parties do not dispute that the Plaintiff's injury falls within the scope of the Arbitration Agreement. Indeed, the injury is the heart of the Agreement. However, the parties do disagree as regards the first consideration, that is, whether the Arbitration Agreement is a valid and enforceable contract. The Plaintiff argues that the Arbitration Agreement is unconscionable and executed pursuant to fraud and duress. As the Plaintiff is the party contesting the contractual arbitration provision, he bears the burden of proving unconscionability. *Fleetwood*, 280 F.3d at 1077.

(4)

A district courts applies ordinary state-law contract principles when the question of an arbitration agreement's formation is at issue. *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006). "As a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts. Therefore, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening §2." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004); *Will-Drill Resources, Inc. Samson Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003); *LaFleur v. The Law Offices of Anthony Buzbee, P.C.*, __So.2d__, 2007 WL 858859, at *4 (La. App. 1 Cir. 3/23/07). Accordingly, Louisiana law may be applied to determine the validity, revocability or enforceability of the Arbitration Agreement under the FAA. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). Louisiana law governs the contract as Louisiana has the most significant relationship to the Arbitration Agreement. It is the place of the Agreement's execution and performance, as well as the location of the accident and witnesses. Moreover, the parties here agree that Louisiana law applies.

(5)

A fundamental principle of general contract law is that "[a] person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that it was not explained or that he did not understand it."  *Shepherd v. Allstate Ins. Co.*, 562 So.2d 1099 (La. App. 4 Cir. 5/30/90); *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003) ("It is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its written terms.").  This rule applies even if the contract is written in a language that the executing party does not speak, if the executing party is blind or illiterate, or if the executing party is unfamiliar with the contract language.  *See id.* (citing *Paper Express, Ltd. v. Pfankuch Maschinen*, 972 F.2d 753, 757 (7th Cir. 1992); *Laborers' Pension Fund v. A & C Envtl., Inc*., 301 F.3d 768, 781 (7th Cir. 2002)).

(6)

"However, ordinary contract principles require a 'meeting of the minds' between the parties in order for agreements to be valid."  *Am. Heritage*, 321 F.3d at 538 (citing *Louisville & N.R. Co. v. Kentucky*, 161 U.S. 677, 692 (1896)); *State v. Pelas*, 99-0150, p. 3 (La.App. 1 Cir. 11/5/99), 745 So.2d 1215, 1217 ("An enforceable contract requires a meeting of the minds.").  Under Louisiana law, one of the conditions of a valid contract is the consent of both parties. *LaFleur*, 2007 WL 858859, at *4 (citing La. Civ. Code. Art. 1927) ("A contract is formed by the consent of the parties established through offer and acceptance.").  "Where there is no meeting of the minds between the parties, there is no consent, [and] thus no enforceable contract."  *Bieber-Guillory v. Aswell*, 98-559, p. 7 (La.App. 3 Cir. 12/30/98), 723 So.2d 1145, 1150; *see also Blann v. Aldridge*, 97-1080 (La.App. 5 Cir. 5/27/98), 712 So.2d 1052, 1053-54 (stating that if "testimony clearly establishes that minds of both parties to contract did not meet touching primary matters involved, consent was absent and contract is invalid"); *Stockstill v. C.F.*

*Industries, Inc.*, 94-2072, p. 25 (La.App. 1 Cir. 12/15/95), 665 So.2d 802, 820, *writ denied*, 96-0149 (La. 3/15/96), 669 So.2d 428.  Consent may be vitiated by error, fraud or duress.  La. Civ. Code Art. 1948.

(7)

The Court need not reach the issue of whether the Arbitration Agreement may be vitiated due to fraud and duress, as there was no "meeting of the minds"and thus the Plaintiff did not knowingly consent to arbitration.  After a review of the Plaintiff's mental and physical condition, as well as circumstances surrounding the Agreement's execution, the Court concludes that the Plaintiff did not understand the nature of the document and did not have a reasonable opportunity to investigate what he was signing.  *See Volt Infor. Scis v. Bd. of Trs.*, 489 US. 468, 478-79 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so" and "[a]rbitration under the [FAA] is a matter of consent").

(8)

Though the Arbitration Agreement was voluntary, the Plaintiff was at the time recovering from a painful back injury and taking medication.  The Plaintiff believed that he had no meaningful alternative to signing the Agreement.  He believed that if he did not sign, he would no longer receive medical care and might possibly lose his job.  It is unclear from Mr. Williams' and Mr. Garza's testimony exactly what the Plaintiff was told in response to his incorrect fears because Mr. Williams and Mr. Garza themselves did not fully understand the process.  Mr. Williams could not even read the Arbitration Agreement.  Though Mr. Garza could read the Agreement, he had no previous experience with such matters.  Given the circumstances surrounding the process, there is insufficient evidence that the Plaintiff had a meaningful understanding regarding the voluntary nature of the Agreement, and the Plaintiff cannot be said to have voluntarily agreed to arbitration.  Moreover, the Plaintiff was not told that he could

consider the Agreement for a period of time or speak with an attorney further about the issue.

Moreover, there is a lack of evidence that the Agreement's substantive terms and conditions were sufficiently explained to the Plaintiff.  In this case, the Plaintiff was forty years old at the time of the Agreement's execution with a ninth grade education. Though Mr. Williams testified at trial that he stated that the Plaintiff would be foreclosed from suing the Defendant in a court of law if the Plaintiff signed the document, it is unclear whether Mr. Williams' statements were repeated accurately to the Plaintiff.  Although Mr. Garza read through the entire Agreement with the Plaintiff, it is unclear exactly what Mr. Garza told the Plaintiff when he followed the reading with explanations and/or an interpretation of what the language meant.  Given the fact that the Plaintiff was relinquishing valuable legal rights by signing the Agreement, he should have been presented by a representative of the Defendant who was knowledgeable about the Arbitration Agreement's terms and conditions.  Instead, he was presented by fellow employees with no prior knowledge or skill handling such matters.

In sum, given the Plaintiff's lack of education, the fact he was taking medication likely impairing his mental faculties, the fact that he had suffered a painful accident only four days before being presented with the Agreement, and various other circumstances surrounding the Agreement's execution, including the fact that employees who presented the Plaintiff with the Agreement did not fully understand the Agreement themselves, the Court finds that the Plaintiff did not knowingly consent to the contract calling for arbitration of his personal injury claim.  As consent is a necessary element of a valid contract, *Leger v. Tyson Foods, Inc.*, 95-1055 (La.App. 3 Cir. 1/31/96), 670 So.2d 397, 401, *writ denied*, 96-0545 (La. 4/19/96), 671 So.2d 920, the Arbitration Agreement is not an enforceable contract.

**IV.  Conclusion**

Accordingly, the Court finds that the Plaintiff is not bound by the Arbitration Agreement

and he may litigate his claims in the appropriate court of law.

New Orleans, Louisiana, this  5th   day of July, 2007.

UNITED STATES DISTRICT JUDGE