UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARTIN GARZA NUNEZ | CIVIL ACTION |
| VERSUS | NO. 06-3777 |
| WEEKS MARINE, INC. | SECTION "L" (5) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.    Factual and Procedural History**

This case arises out of injuries sustained by Martin Garza Nunez (the "Plaintiff") on June 24, 2006, while the Plaintiff was employed by the Defendant Weeks Marine, Inc. as a member of the crew of the dredge, the GEORGE D. WILLIAMS. The GEORGE D. WILLIAMS is owned and operated by the Defendant Weeks Marine, Inc.

On July 17, 2006, the Plaintiff seaman filed suit against the Defendant Weeks Marine, Inc. in this Court for injuries he allegedly sustained on June 24, 2006 while working aboard the Defendant's vessel located in the Atchafalaya Bay Channel. The Plaintiff filed an amended complaint on December 19, 2008 to add as a Defendant Atlantic Sounding Company, the actual employer of the Plaintiff and a wholly owned subsidiary of Weeks Marine, Inc. The Plaintiff alleges that on and before June 24, 2006, he was employed by Atlantic Sounding Company to work as a member of the crew of its dredge, the GEORGE D. WILLIAMS. The Plaintiff claims damages under the Jones Act, 46 U.S.C. § 688, and general maritime law predicated on negligence and unseaworthiness of the vessel, along with a claim for maintenance and cure. The Plaintiff also asserts that he is entitled to penalties and attorneys' fees for the Defendants' failure to pay maintenance and cure.

The Defendants denied that the Plaintiff's injuries were caused by the accident at issue, and denied that they were negligent. The Defendants disputed the extent and nature of the injury, and contend that the Plaintiff has received the appropriate amount of maintenance and cure. The Defendants assert that the fractures of the vertebrae on the left side of Plaintiff's body should have resolved in 3-6 months, with physical therapy as the only treatment. The Defendants further argue that the Plaintiff underwent unnecessary surgery.

It is uncontested that the Plaintiff is a Jones Act seaman. The parties disputed causation and the Defendants' negligence, whether the vessel was unseaworthy, the nature and extent of the injuries, whether the Plaintiff was contributorily negligent, the reasonableness of Plaintiff's subsequent treatment, whether the Defendants were arbitrary and capricious in failing to pay maintenance and cure, and total damages, among other facts.

At the joint request of the parties the Court severed the maintenance and cure claim for later presentation to the Court without a jury. The Jones Act and unseaworthiness portion of the case came on for trial before a jury on January 5, 2009 and concluded on January 7, 2009 on the issue of whether the Defendants were negligent or whether the barge was unseaworthy, and to determine the amount of damages. In its answers to interrogatories, the jury found that the barge was not unseaworthy. As to claims for compensatory damages, the jury held the Defendants to be 25% negligent, and the Plaintiff 75% negligent. The jury awarded the Plaintiff $10,000 for past medical expenses, $10,000 future medical expenses, $66,000 past wages, $40,000 future wages, and $100,000 for pain and suffering, mental anguish and impairment. The Plaintiff's maintenance claim came on for trial without a jury on January 21, 2009 and the Court is ready to rule.

The Court has carefully considered the testimony of all of the witnesses, the exhibits

entered at trial, and the record. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court hereby enters the following findings of fact and conclusions of law. To the extent that any findings constitute conclusions of law, the Court hereby adopts them as such, and to the extent that any conclusions of law constitute findings of fact, the Court hereby adopts them as such.

## II. Findings of Fact

(1)

Plaintiff seaman Martin Garcia Nunez is an individual of the age of majority and a citizen of Mexico.

(2)

At all times pertinent hereto, the Defendants were the owner and operator of the vessel GEORGE D. WILLIAMS.

(3)

For all relevant times, Defendant Atlantic Sounding Co., a wholly owned subsidiary of Weeks Marine, Inc. was the Plaintiff's employer.

(4)

On June 24, 2006, the Plaintiff sustained injuries while he was employed as a deckhand aboard the Defendant's vessel GEORGE D. WILLIAMS. On June 24, 2006, while the Plaintiff was in the course of his employment aboard the dredge, an overhead cable broke and a pulley and excess cable fell some eight (8) or nine (9) feet and hit him on the head, neck and back. Mr. Nunez was airlifted from the site of the accident to Teche Regional Medical Center.

(6)

The Defendants arranged for Dr. Gregory Gidman, an orthopaedist who is board certified

by the American Board of Orthopaedic Surgeons, to examine the Plaintiff on June 27, 2006. Dr. Gidman found four fractured transverse spinous processes and a cervical contusion which he related to the accident on June 24, 2006.

The Plaintiff's treating physician, Dr. Fred Laurel Perez, first examined the Plaintiff on July 3, 2006. Dr. Perez' initial diagnosis on July 3, 2006 included fractured ribs, left shoulder contusion, left inguinal hernia, cervical strain and sprain, possible cervical herniated disc, lumbar strain and sprain, possible lumbar transverse process fractures, possible herniated disc, L4-5, and sacroliac joint pain. Dr. Perez prescribed treatment and medication and periodically monitored the Plaintiff's progress. On June 26, 2007, the Plaintiff continued to complain of more back, cervical and left shoulder pain. After the Plaintiff had extensive conservative treatment, and demonstrated no improvement, his treating physician, Dr. Nunez, determined that lumbar surgery would be the appropriate procedure. Dr. Nunez performed lumbar surgery on November 9, 2007. Dr. Perez referred the Plaintiff to another physician for hernia surgery. On November 30, 2007, Dr. Jose Farias-Jimenez performed an inguinal hernia repair on Mr. Nunez. Dr. Perez determined that the necessity of that surgery is related to the injury that occurred on June 24, 2006.

The Defendants arranged for Dr. Gary C. Freeman, an orthopaedist who is board certified by the American Board of Orthopaedic Surgeons, to examine the Plaintiff. Dr. Freeman first saw the Plaintiff on September 18, 2006 and again on December 18, 2006, October 18, 2007 and January 16, 2008. Based on these four examinations Dr. Gary Freeman found Plaintiff had reached maximum medical improvement on December 18, 2006, and that the hernia likely pre-existed his injury. Dr. Freeman reviewed the report of Dr. Gidman, but did not examine the medical records of Dr. Perez, Plaintiff's treating physician, who had examined the Plaintiff over

twenty (20) times and performed surgery on him.

The Defendants also hired Dr. William Blair Jr., an orthopaedist who is board certified by the American Board of Orthopaedic Surgeons, to conduct a peer review of Dr. Perez's treatment. Dr. Blair opined that Mr. Nunez should be fully recovered from his fractured L1, L2, L3 and L4 lumbar spine transverse processes after six months from the date of the injury.

(5)

From June 30, 2006 until December 18, 2006, the Defendants paid maintenance to the Plaintiff in the amount of $20 for each day, totaling $3,400. The Defendants also paid $3,475.37 for medical treatment to the Plaintiff.

### III. Conclusions of Law

(1)

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333, which provides original jurisdiction over admiralty or maritime claims, the Jones Act, 46 U.S.C. § 688, and Rule 9(h) of the Federal Rules of civil Procedure. Venue is proper because the Defendants are subject to the personal jurisdiction of this court. The applicable substantive law is the Jones Act and general maritime law of the United States.

(2)

Since the Plaintiff's Jones Act and unseaworthiness claims were addressed before the jury, the only matter that remains before this Court is a determination as to whether the Plaintiff is entitled to maintenance and cure benefits and/or whether he is entitled to attorney's fees if the Defendants' refusal to pay maintenance and cure after December 18, 2006 was callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent.

(3)

A seaman injured in the course of his or her employment has a claim for maintenance and cure. Maintenance and cure is the implied right of the seaman arising from his or her employment relationship with the shipowner and is "independent of any other source of recovery for the seaman (e.g., recovery for Jones Act claims)." *Bertram v. Freeport McMoran, Inc*., 35 F.3d 1008, 1013 (5th Cir.1994). Maintenance is the right of a seaman to food and lodging and cure is the right to necessary and appropriate medical services. Both extend to the point at which the seaman reaches maximum medical recovery. *See* Schoenbaum, *Admiralty and Maritime Law of Admiralty*, 297 (2d ed.1975); *Brees v. AWI, Inc*., 823 F.2d 100, 104 (5th Cir.1987) (citing *Vaughan v. Atkinson*, 369 U.S. 527, 531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962)). Therefore, the maintenance and cure duty does not extend to treatment which is only palliative in nature and "results in no betterment in the claimant's condition." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir.1996). The seaman's claim for maintenance and cure lies against the seaman's employer, which in this case, is the Defendant Weeks Marine, Inc., a wholly owned subsidiary of Atlantic Sounding Company. *See Caulfield v. AC & D Marine, Inc*., 633 F.2d 1129, 1131 (5th Cir. Unit A 1981).

(4)

Upon receiving a demand for maintenance and cure, a shipowner is not required to begin payments immediately, but may undertake a reasonable investigation of the seaman's claim. *Morales v. Garijak, Inc*., 829 F.2d 1355, 1358 (5th Cir.1987). If the shipowner's failure to pay is "callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent," the shipowner is liable for attorney's fees. *Id.* (describing "escalating scale" of liability); *see also Vaughan*, 369 U.S. at 530-31; *Brown v. Parker Drilling Offshore Corp*., 410 F.3d 166, 177 (5th Cir.2005) (citing *Morales* standard with approval).

(5)

In order to recover for a claim of maintenance and cure and attorney's fees, the Plaintiff bears the burden of proving that he was injured in the course of his employment aboard the vessel, his employer failed to pay his maintenance and cure and this failure was not only unreasonable, but was also callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent. *See Morales*, 829 F.2d at 1359.

(6)

When there are conflicting diagnoses and prognoses from various physicians, there is a question of fact to be determined by the trier of fact as to a plaintiff's entitlement to maintenance and cure benefits and as to whether an employer's termination of maintenance and cure benefits was arbitrary or capricious. *Lodrigue v. Delta Towing, L.L.C.*, 2003 WL 22999425, *6 (E.D.La. Dec. 19, 2003) (citing *Tullos v. Resource Drilling, Inc*., 750 F.2d 380 (5th Cir.1985)). "When there are ambiguities or doubts [as to a seaman's right to receive maintenance and cure], they are resolved in the seaman's favor." *Id.* (quoting *Vaughan v. Atkinson*, 369 U.S. 527, 532, 82 S. Ct. 997, 8 L.Ed.2d 88 (1962)) (alteration in original).

(7)

The credible evidence supports the conclusion that the Plaintiff sustained a herniated cervical disk and a herniated lumbar disk, an inguinal hernia and injury to the shoulder on or about June 24, 2006 while working aboard the GEORGE D. WILLIAMS and that he was rendered unable to return to duty as a result of these injuries. The force of the blow fractured four sections of his lumbar spine. It is reasonable to conclude that the intervertebral discs in this area were also damaged.

(8)

The Court concludes that the findings of Dr. Perez are reliable. In addition to conducting the examination on July 3, 2006, Dr. Perez, the Plaintiff's treating physician, examined the Plaintiff on July 17, 2006 and had a bone scan and MRI performed to confirm his diagnosis. Dr. Perez saw the Plaintiff again on July 24, 2006, October 9, 2006; he prescribed epidural steroid injections on October 16, 2006 and saw the Plaintiff on November 10, 2006, December 9, 2006, January 18, 2007, January 29, 2007, February 26, 2007, March 20, 2007, April 17, 2007, May 23, 2007, June 26, 2007, October 16, 2007, November 9, 2007, November 28, 2007, January 16, 2008, March 19, 2008, April 30, 2008, July 28, 2008, October 29, 2008, November 19, 2008.

Dr. Perez noted the existence of a disc bulge, which was confirmed by an MRI. Dr. Perez noted radicular pain in the Plaintiff's left leg. Dr. Perez reported that on November 9, 2007, he did a "laminectomy at L4-5, a laminectomy at L5-S1 with neural foraminotomy at both levels, L4-L5 and L5-S1, right and left, with pedicle screws and bone graft." Dr. Perez determined that the treatment prescribed, and the lumbar surgery and hernia surgery were necessitated by the injury that occurred on June 24, 2006.

Dr. Perez found that the Plaintiff reached maximum medical improvement on October 29, 2008. Accordingly, the Court finds that the Plaintiff is entitled to cure for the following necessary and appropriate medical services that Dr. Perez related to the accident of June 24, 2006:

| | |
|---|---|
| Lumbar Surgery | $18,000 |
| Hernia Surgery | $9,512.80 |
| McAllen MRI Center | $12,300 |
| Dr. Perez | $23,707.03 |
| Total | $63,519.83 |

(9)

In order to recover maintenance, the seaman plaintiff must produce "evidence to the court that is sufficient to provide an evidentiary basis for the Court to estimate his actual costs." *Hall v. Noble Drilling (U.S.), Inc.*, 242 F.3d 582, 590 (5th Cir.2001). Provided he has incurred the expense, the seamen is entitled to the reasonable cost of food and lodging. *Id.* at 587. "A seaman's burden of production in establishing the value of maintenance is feather light: his own testimony as to reasonable cost of room and board in the community where he is living is sufficient to support an award." *Yelverton v. Mobile Laboratories, Inc.*, 782 F.2d 555, 558 (5th Cir.1986) (citing *Curry v. Fluor Drilling Services, Inc.*, 715 F.2d 893 (5th Cir.1983)). Lodging encompasses those expenses "necessary to the provision of habitable housing," including heat, electricity, home insurance, and real estate taxes. Hall, 242 F.3d at 587 n. 17 (citing *Gillikin v. United States*, 764 F.Supp. 270, 273 (E.D.N.Y.1991)). In this case, the Defendants paid the Plaintiff maintenance at a rate of $20 per day until December 18, 2006. The Court finds upon a review of all the evidence that a maintenance rate of $20 per day is reasonable and appropriate in this case. The Plaintiff has already received $3,400 for maintenance until December 18, 2006. As the Court finds that the date of maximum medical improvement (MMI) is October 29, 2008, the Plaintiff is entitled to maintenance in the amount of $20 from December 19, 2006 until October 29, 2008

(10)

A cure award cannot duplicate tort damages. *See Boudreaux*, 280 F.3d at 469; *Brister*, 946 F.2d at 361. As the Defendants have paid the Teche Regional Medical Center's bills, the Bourgeois Medical Center's bills, and the Acadiana Center for Orthopedic and Occupational Medicine's bills, in the total amount of $3,475.37 toward cure, and as the jury has awarded the

Plaintiff $10,000 in past medical expenses, the Court finds that the Plaintiff's cure award shall be reduced by $13,475.37. Accordingly, the Plaintiff is entitled to cure in the amount of $50,044.46.

(11)

The Defendants based their decision to discontinue maintenance and cure within six months of the date of the injury on the reports of Drs. Freeman, Gidman, and the peer review of Dr. Blair, indicating that the Plaintiff should have fully recovered from his fractured L1, L2, L3 and L4 lumbar spine transverse processes after six months from the date of the injury. The failure of the Plaintiff's employer to promptly pay maintenance was not callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent, as the affidavit of Thomas Langan demonstrates that all decisions regarding whether to pay maintenance and cure benefits to the Plaintiff were based upon the opinions of three board certified orthopaedic surgeons. The Defendants' actions do not rise to the level of willful callousness or "egregious fault" required for the Defendants to be considered liable for attorneys' fees. *See Guevara*, 59 F.3d at 1513. Accordingly, the Court declines to award the Plaintiff attorneys' fees for failure to pay maintenance and cure.

### IV.     Pre-Judgment Interest

Pre-judgment interest may be awarded in admiralty cases if appropriate, and the Court finds that an order of pre-judgment interest is appropriate in this case. "Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Jauch v. Nautical Services, Inc.*, 470 F.3d 207, 214-15 (5th Cir.2006). The Court finds that an award of prejudgment interest is warranted on the Plaintiff's maintenance claim December 19, 2006 until

October 29, 2008 at the rate of 5.5 percent. The Court further finds that an award of prejudgment interest is warranted on the Plaintiff's cure from the date of judicial demand at the rate of 5.5 percent.

## V.  Summary

On the basis of the above Findings of Facts and Conclusions of Law, the Court finds in accordance with the jury's verdict that the Plaintiff sustained damages due to the Defendants' negligence, that the Plaintiff is entitled to payment for maintenance and cure. However, the Defendants are not liable for attorneys' fees for willful denial of maintenance and cure. Accordingly, the Plaintiff is entitled to recover the following damages from the Defendants:

(1) Cure: $50,044.46, with prejudgment interest from the date of judicial demand at the rate of 5.5 percent

(2) Maintenance: $20.00 per day from December 19, 2006 until October 29, 2008 with prejudgment interest at the rate of 5.5 percent

IT IS SO ORDERED.

New Orleans, Louisiana this 23rd day of April, 2009.

_____
UNITED STATES DISTRICT JUDGE